# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL A. JANNUZZI, and, DEBRA JANNUZZI | CIVIL ACTION NO. 3:09-cv-970 |
| Plaintiffs, | |
| v. | (JUDGE CAPUTO) |
| THE BOROUGH OF EDWARDSVILLE, et al., | |
| Defendants. | |

## MEMORANDUM

Presently before this Court is Defendants' Motion to Dismiss Plaintiff's Complaint (Doc. 6) for failure to state a claim under Rule 12(b)(6). Fed. R. Civ. Pro. 12(b)(6). Defendants' motion will be granted in part and denied in part due to municipal immunity, the statute of limitations, and failure to state a claim. This Court has jurisdiction over the federal causes of action pursuant to 28 U.S.C. § 1331 (federal question), and has jurisdiction over the remaining state causes of action pursuant to 28 U.S.C. § 1367 (supplemental).

## BACKGROUND

The facts alleged in Plaintiffs' Complaint are as follows:

The Plaintiffs Michael A. Jannuzzi ("Januzzi") and his wife Debra Jannuzzi are residents of Edwardsville, Pennsylvania. (Compl. ¶ 6, Doc. 1.) The Plaintiffs bring this action against three municipal defendants, the Borough of Edwardsville, the Council of the Borough of Edwardsville, and the Edwardsville Zoning Hearing Board. (*Id.* ¶¶ 7-9.) The Plaintiffs also bring this action against Ray King ("King"), James Hanky ("Hanky"), Roland

Roberts ("Roberts"), John Sedeski ("Sedeski"), Leo Martin ("Martin"), and Carol Brawley ("Brawley"). (*Id.* ¶¶ 10-15.) At all relevant times Brawley served as the tax collector for Edwardsville. (*Id.* ¶ 15.) Sedeski served as a city councilman. (*Id.* ¶ 27.) Martin was a member of the city council. (*Id.* ¶ 40.)

In approximately 1983, the Plaintiffs opened a Personal Care Facility in Edwardsville. (Compl. ¶ 18.) The Plaintiffs obtained permits from Edwardsville to use the facility as a "Boarding House," and were advised that they needed to have an inspection from the Pennsylvania Department of Aging before opening the facility. (*Id.* ¶¶ 18-19.) Edwardsville's inspector, Hugh Jones ("Jones"), inspected the facility and advised the Plaintiffs that everything passed the inspection. (*Id.* ¶ 20.) Before leaving the facility, Jones asked the Plaintiffs if they or the residents were registered to vote. (*Id.* ¶ 20.) After the Plaintiffs stated they were not interested in political matters, Jones failed to send the Inspection Report to the Department of Aging. (*Id.* ¶¶ 20-21.) Only after registering to vote did Jones submit the Inspection Report required to open the facility. (*Id.* ¶ 21.) "The Defendants individually and collectively conspired to intimidate the Plaintiffs' tenants in regard to how they voted." (*Id.* ¶ 22.) "On one occasion, two or more of the Defendants or their agents threatened and/or photographed the Plaintiffs' tenants when they attempted to vote." (*Id.* ¶ 23.) "On another occasion" an individual, known as "Ed the Barber," tried to coerce Januzzi to get the residents to vote for him. (*Id.* ¶ 24.) Because Jannuzzi refused to help, "Ed the Barber" stated that if elected he would make it difficult for Jannuzzi to run his facility. (*Id.* ¶ 24.) After being elected to the Council of Edwardsville, "Ed the Barber" made a motion to have all fire, police, and ambulance service terminated to the Plaintiffs' facility. (*Id.* ¶ 25.)

Representatives of Edwardsville also said that the Plaintiffs' residents could not vote because they were "mental" and "retarded." (*Id.* ¶ 26.)

In October 2005, Plaintiffs attempted to sell approximately five (5) acres of land in Edwardsville. (Compl. ¶ 27.) Jannuzzi was contacted by Dr. Anthony Giardano about purchasing the property. (*Id.* ¶ 27.) Councilman Sedeski told Dr. Giardano that he would be required to pave and put curbing on a portion of the unimproved section of Main Street near the property. (*Id.* ¶ 27.) Sedeski also mistakenly commented to Jannuzzi, thinking he was Dr. Giardano, that the property should not be purchased because there were all kinds of environmental violations on the land. (*Id.* ¶ 28.) Sedeski also stated that a holding pond would be required for a sub-division planned by Jannuzzi, and that the pond would burst and flood the five acres. (*Id.* ¶¶ 28-29.) Sedeski went on to state that "there is no way that he was going to issue a permit to build a house on the five acres." (*Id.* ¶ 30.) "Sedeski also falsely stated that he would not approve anyone to come in to test the soil in order to install a septic system, so that the home could be constructed, because septic systems weren't allowed in Edwardsville Borough." *(Id.* ¶ 30.) As a result of these comments, Dr. Giardano refused to purchase the property. (*Id.* ¶ 30.)

In January or February 2006, the Plaintiffs also attempted to sell other properties, "including both apartments, and approximately twenty-seven (27) acres of land to one Tim McDaniel." (Compl. ¶ 31.) Mr. McDaniel was advised by representatives of Edwardsville that he would not be allowed to build more apartments or develop the twenty-seven (27) acres. (*Id.* ¶ 31.) In approximately February 2006, an interested purchaser contacted the Plaintiffs' real estate agent and stated that the purchaser was interested in buying the apartment buildings for $1.3 million. (*Id.* ¶ 33.) When that purchaser's bank sent an

3

appraiser to the property, Defendant King told the appraiser that the apartments were being operated as an illegal business, and that Jannuzzi got the occupancy permits under false pretenses. (*Id.* ¶ 33.) On or about October 2006, the Plaintiffs' realtor was contacted by other potential buyers to purchase some of his properties. (*Id.* ¶ 34.) Defendant Roberts told those buyers that the land was solid rock, that they would be unable to tap into the sewer line as it was full, that septic systems are not allowed in Edwardsville, that Jannuzzi "will swindle you by not giving you an easement,"and that Jannuzzi was a crook. (*Id.* ¶ 34.) All of the statements made by Roberts were false. (*Id.* ¶ 34.) As a result of the Defendants actions, the Plaintiffs suffered a loss of at least $1.6 million. (*Id.* ¶ 31.) In 2008 and 2009 the Plaintiffs unnamed representative was told by King, Hanky, and Roberts that if they sold any properties they would all be closed down. (*Id.* ¶ 35.)

      A policeman from Edwardsville stopped a tenant of the Plaintiffs' apartment complex and advised him he should move out. (Compl. ¶ 32.) The policeman also advised that the tenant should tell others to do the same, because the Edwardsville Police were going to come down and arrest all the tenants and close the property down. (*Id.*) Brawley falsely told Plaintiffs' real estate agent that Jannuzzi is a "crook, the state should shut him down; he stole all of the money form the residents of his personal care home." (*Id.* ¶ 39.) Councilman Martin told prospective purchasers that "we will never approve anything for Mike Jannuzzi." (*Id.* ¶ 40.)

      In July 2008, Roberts falsely told "the Plaintiffs' representatives" that Jannuzzi did not obtain proper permits to build a home on his property. (Compl. ¶ 36.) From January to March, and again in May 2008, Roberts stated that he would never approve any development of real estate for Jannuzzi. (*Id.* ¶ 37.) Also in May 2008, Roberts stated that

4

Jannuzi was no good, that he was a crook, that the council members did not like him, and that the council would not approve any project in which Jannuzzi was involved. (*Id.* ¶ 38.) Roberts also stated that Jannuzzi put a bad taste in many of the borough officials' mouths, and that Roberts called Jannuzzi a "guinea bastard." (*Id.* ¶ 38.)

On or about May 19, 2008, Jannuzzi was notified that he was violating "the Zoning Ordinance of Edwardsville Borough" by operating a rooming house within the R-3 District of Edwardsville. (Compl. ¶ 41-42.) "Subsequently, the Plaintiff[s] appealed the issuance of the letter from Edwardsville Borough dated May 19, 2008 which directed the Plaintiffs from terminating [sic] the alleged violation of the Edwardsville Borough Zoning Ordinance." (*Id.* ¶ 42.) R-3 Districts in Edwardsville permit multi-family dwellings including garden apartments and other similar uses. (*Id.*) The municipal representatives took the position that the zoning ordinance did not allow rooming houses in any District of Edwardsville. (*Id.*) Plaintiffs requested a special exception so that they would be allowed to continue to operate their business. (*Id.* ¶ 43.) The Plaintiffs' request was turned down. (*Id.*) "All of the Defendants have attempted to prevent the Plaintiffs from utilizing their property in Edwardsville Borough for any multi-family type use." (*Id.* ¶ 44.)

On May 21, 2009, Plaintiffs filed this action in the District Court for the Middle District of Pennsylvania. (Doc. 1.) Defendants filed a motion to dismiss on August 26, 2009. (Doc. 6.) Both parties have submitted briefs, and the motion is now ripe for disposition.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. FED. R. CIV. PRO. 12(b)(6). Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element, *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556); *see also Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (requiring a complaint to set forth information from which each element of a claim may be inferred). In light of Federal Rule of Civil Procedure 8(a)(2), the statement need only "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555). "[T]he factual detail in a complaint [must not be] so undeveloped that it does not provide a defendant [with] the type of notice of claim which is contemplated by Rule 8." *Phillips*, 515 F.3d at 232; *see also Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007).

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Id.* The Court need not assume the plaintiff can prove facts that were not

6

alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions,'" *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

When considering a Rule 12(b)(6) motion, the Court's role is limited to determining whether a plaintiff is entitled to offer evidence in support of her claims. *See Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). The Court does not consider whether a plaintiff will ultimately prevail. *See id.* A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States,* 220 F.3d 169, 178 (3d Cir. 2000).

**DISCUSSION**

Plaintiffs bring eight (8) causes of action against all Defendants: Count I - violations of the Equal Protection Clause; Count II - violations of the Fifth Amendment's Taking Clause; Count III - violations of the Due Process Clause; Count VI - violations of the right to vote; Count V - defamation; Count VI - interference with contractual relationships; Count VII - conspiracy under § 1985 to violate constitutional rights; Count VIII - failure to prevent constitutional harms under § 1986. Defendants argue that many of the claims should be dismissed as barred by the statute of limitations, as barred by the Pennsylvania Political Subdivision Tort Claims Act ("PSTCA"), and for failure to state a claim.

7

**I. Statute of Limitations**

An action under § 1983 should apply the statute of limitations applicable to state personal injury torts. *Kost v. Kozakiewicz*, 1 F.3d 176, 190 (3d. Cir. 1993). In Pennsylvania, the statute of limitations for a § 1983 claim is two years. *Sameric Corp. of Delaware, Inc. v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir. 1998); *see* 42 P.S. § 5524. There is also a two year statute of limitations for claims of intentional interference with contractual relationships. 42 P.S. § 5524(3). Claims for failure to prevent a conspiracy causing constitutional violations under 42 U.S.C. § 1986, and Pennsylvania slander claims each have a statute of limitations of one year. 42 U.S.C. § 1986; 42 P.S. § 5523.

The date on which Plaintiff's cause of action accrued was "when the plaintiff knew or should have known of the injury upon which its action is based." *Sameric Corp. of Del., Inc. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998). Plaintiffs filed the present action on May 21, 2009. (Doc. 1.) Therefore, any claims arising from injuries which the Plaintiffs knew or should have known about prior to May 21, 2008 (for slander and failure to stop constitutional violations), or May 21, 2007 (remaining allegations), would be barred by the statute of limitations.

The Plaintiffs argue that the continuing violations doctrine permits their claims being brought beyond the normal statute of limitations period. "The continuing violations doctrine is an 'equitable exception to the timely filing requirement.'" *Cowell v. Palmer Township*, 263 F.3d 286, 292 (3d Cir. 2001) (quoting *West v. Philadelphia Elec. Co.*, 45 F.3d 744, 754 (3d Cir. 1995)). "To proceed under the doctrine, a plaintiff must establish both: 1) that "the last act evidencing the continuing practice falls within the limitations period"; and 2) that "the defendant's conduct is more than the occurrence of isolated or sporadic acts." *Schneck v.*

*Saucon Valley Sch. Dist.*, 340 F. Supp. 2d 558, 580 (E.D. Pa. 2004) (citing *Cowell*, 263 F.3d at 292). The continuing violation doctrine must be applied to the causes of action.

A. Right to Vote (Count IV)

Plaintiffs argue that the continuing violations doctrine provides an exception to bring their right to vote claims outside of the time allowed by the statute of limitations. The Plaintiffs allege three separate instances of conduct which interfered with the right to vote. First, in 1983 by Inspector Hugh Jones, who pressured the Plaintiffs to have their tenants register to vote. (Compl. ¶ 21.) Second, at an unknown time, "[o]n one occasion, two or more of the Defendants or their agents threatened and/or photographed the Plaintiffs' tenants when they attempted to vote." (*Id.* ¶ 23.) Third, pressure was also placed on the Plaintiffs or their tenants by "Ed the Barber," at an unknown time. (*Id.* ¶ 24.) None of these allegations, however, assert that "the last act evidencing the continuing practice falls within the limitations period." *Schneck*, 340 F. Supp. 2d at 580. Because the alleged conduct falls outside the statute of limitations, the Defendants' Motion to Dismiss will be granted as to Count IV.

B. Slander (Count V)

Plaintiffs also argue that the continuing violation doctrine permits them to bring slander claims otherwise barred by the statute of limitations. The continuing violations doctrine does not, however, apply to actions for defamation. *Flowers v.* Carville, 310 F.3d 1118, 1126 (9th Cir. 2002) ("[A] cause of action for defamation accrues immediately upon the occurrence of the tortious act and thus, is not appropriate for the continuing violation exception.") (quoting *Lettis v. U.S. Postal Serv.,* 39 F. Supp. 2d 181, 205 (E.D.N.Y. 1998); *Smith v. IMG Worldwide, Inc.*, 437 F. Supp. 2d 297, 305 (E.D. Pa. 2006); *Porta v. Fee*, No.

98-2094, 1998 WL 334355 (E.D. Pa. June 24, 1998); *Dowling v. Philadelphia Newspapers, Inc.*, No. 3031, 1995 WL 1315957 (Pa. Com. Pl. Feb. 6, 1995). Because the continuing violations doctrine does not apply, the one year statute of limitations under Pennsylvania law will cut off the Plaintiffs claims prior to May 21, 2008. 42 P.S. § 5523. The Defendants' Motion to Dismiss as to defamatory statements made prior to May 21, 2008, will be granted.

C. Remaining allegations

The Plaintiffs' remaining allegations all relate to one pattern of conduct: the Plaintiffs attempt to make use of or sell a property in the Borough of Edwardsville, and one or more of the Defendants interferes. These allegations form the basis of the Fifth Amendment takings claims, the equal protection and due process claims, the § 1985 and § 1986 conspiracy claims, and the contractual interference tort claims. The Plaintiffs allege numerous specific incidents which have occurred since 2005 in this pattern. The "last acts" alleged occurred within a year of the filing of this action, thus they fall within any of the relevant statute of limitations periods. The critical question is whether the conduct alleged is "more than the occurrence of isolated or sporadic acts." *Schneck*, 340 F. Supp. 2d at 580.

The Third Circuit Court of Appeals in *Cowell v. Palmer Twp.*, set forth a three factor test to determine if violations are more than isolated or sporadic acts:

> (1) subject matter -- whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; (2) frequency -- whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence -- whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate.

*Cowell*, 263 F.3d at 292 (citing *West v. Phila. Elec. Co.*, 45 F.3d at 755 n.9). As to the first

10

factor, the alleged repeated violations all relate to the same subject matter and the same type of discrimination; that the agents of the Borough of Edwardsville are singling out the Plaintiffs and preventing them from making use of their property. The second factor also leans in favor of a continuing violation, as the Plaintiffs allege a number of occurrences within a window of only a few years. Finally, the degree of permanence also is in favor of a continuing violation, as each interference allegedly prevented the sale of the property. If the alleged conduct would continue, the Plaintiffs would be permanently denied the ability to use their property. Even if the actions stopped, the Plaintiffs have already lost opportunities to make use of the properties. At this stage of the proceedings, I find that the doctrine of continuing violations has been met by the Plaintiffs' allegations, and that therefore the remaining claims are timely. The Defendants' Motion to Dismiss with respect to the statute of limitations on the remaining claims will be denied.

## II. Pennsylvania Subdivision Tort Claims Act

The municipal defendants argue that they are immune from the Pennsylvania causes of action under the Pennsylvania Subdivision Tort Claims Act ("PSTCA"). 42 P.S. § 8541, et seq. Section 8541 reads: "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." *Id.* While there are a number of exceptions listed under Section 8542 which do permit liability, none of these exceptions are applicable here. *Id.* § 8542(b). Furthermore, the Plaintiffs allege that the Defendants acted intentionally, and the immunity for a governmental agency can only be vacated by negligent acts falling under one of the specified exceptions. *Wade v. Pittsburgh*, 765 F.2d 405, 412 (3d Cir. 1985) (Section 8542 exceptions apply only to claims against a municipality based upon "negligent acts" of

11

employees). The Plaintiffs argue that Section 8550's exception for "willful misconduct" can nullify immunity under the PSTCA. 42 P.S. § 8550. Section 8550, however, applies only to remove the immunity of *individuals*. *Id.* § 8550 ("willful misconduct" eliminates individual immunity at §§ 8545, 8546, 8548, and 8549, but *not* agency immunity at § 8541).

An organization qualifies as a local agency under § 8541 if: (1) it was created pursuant to relevant law; and (2) it is legally recognized as the official agency for a political subdivision. *See Guinn v. Alburtis Fire Co.,* 614 A.2d 218, 219 n.2 (Pa. 1992). As the Plaintiffs admit in their complaint (Compl. ¶¶ 7-9), there is no question that the Borough of Edwardsville, the Council of the Borough of Edwardsville, and the Edwardsville Zoning Hearing Board were at all times created pursuant to law and were recognized political subdivisions. Therefore, they are entitled to immunity as to Counts V (slander) and VI (intention interference with contractual relationships). Plaintiffs are correct that the PSTCA does not shield the Defendants from the remaining federal causes of action. *Wade v. Pittsburgh*, 765 F.2d at 407. The motion to dismiss by the Borough of Edwardsville, the Council of the Borough of Edwardsville, and the Edwardsville Zoning Hearing Board will be granted as to Counts V and VI.

### III. Failure to State a Claim

As a threshold matter, while the Plaintiffs articulate a number of allegations, several of them are "so undeveloped that it does not provide a defendant [with] the type of notice of claim which is contemplated by Rule 8." *Phillips*, 515 F.3d at 232; *see also Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007). For example, the Plaintiffs fail to identify what, if any, relationship Defendants King, Hanky, or Roberts have to the Borough of Edwardsville. Similarly, many of the allegations are made

without any context or time frame, such as "[o]n one occasion, two or more of the Defendants or their agents threatened and/or photographed the Plaintiffs' tenants when they attempted to vote." (Compl. ¶ 23.) These types of undeveloped factual assertions fail to provide notice of the claim being presented, and do not provide the basis of a claim. Similarly, the Plaintiffs allege some legal conclusions without any factual support, such as "[t]he Defendants individually and collectively conspired to intimidate the Plaintiffs' tenants in regard to how they voted." (*Id.* ¶ 22.) While such legal conclusions can form the outline of a complaint, without any factual support they also fail to state a claim. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). Only those allegations which met the pleading requirements will be considered.

### A. Procedural Due Process

To establish a cause of action for a procedural due process violation, a plaintiff must first prove that a person acting under color of state law deprived him of a protected property interest; and second, he must show that the procedures available to him failed to provide him with due process of law. *See, e.g., Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000). Thus, "[i]n order to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available to him or her, *unless* those processes are unavailable or patently inadequate." *Alvin*, 227 F.3d at 116 (emphasis added). I need not resolve the issue of whether the Plaintiffs were deprived of a protected property interest because there were clearly adequate procedures provided.

"[A] state provides constitutionally adequate procedural due process when it provides reasonable remedies to rectify a legal error by a local administrative body." *DeBlasio v. Zoning Bd. of Adjustment*, 53 F.3d 592, 597 (3d Cir. 1995), overruled on other grounds by

13

*United Artists Theatre Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392 (3d Cir. 2003). In other words, when a state "affords a full judicial mechanism with which to challenge the administrative decision" in question, the state provides adequate procedural due process, whether or not the plaintiff avails him or herself of the provided appeal mechanism. *Id.* (quoting *Midnight Sessions, Ltd. v. City of Philadelphia*, 945 F.2d 667, 682 (3d Cir. 1991)). The Plaintiffs allege that procedural due process was violated by the Borough of Edwardsville Zoning Hearing Board. Any determination by that body, however, could be appealed to the Pennsylvania courts (as the Plaintiffs did on at least one occasion). Regardless of whether this judicial remedy was utilized, the *existence* of such an outlet demonstrates that adequate procedural due process was provided. The Defendants' Motion to Dismiss with respect to procedural due process will be granted.

    B. Conspiracy Under Section 1985 (Count VII)

Plaintiffs allege at Count VII a claim of conspiracy, which they clarify in their Brief in Opposition as a claim under Section 1985. (Doc. 11 at 13.) Section 1985(3) provides, in part:

> If two or more persons in any State or Territory conspire . . ., for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . .; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3). The Third Circuit Court of Appeals has held that for a plaintiff to

14

properly allege a violation of Section 1985(3), a plaintiff must plead the following elements: (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons of the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States. *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir.1997). "In this area of law, a municipality and its officials are considered a single entity that cannot conspire with itself." *Doherty v. Haverford Twp.*, 513 F. Supp. 2d 399, 409 (E.D. Pa. 2007). While a conspiracy cannot be formed between a municipality and its officials, here several Defendants are not alleged to be governmental officers. The Plaintiffs, therefore, sufficiently plead a conspiracy. Plaintiffs also sufficiently plead actions in furtherance of the conspiracy, and an injury.

Because Plaintiffs allege that the Defendants acted because of "personal animus." (Compl. ¶ 86.), they are alleging a "class of one" type of discrimination. To state a class of one claim, the plaintiff must allege that (1) the defendant treated her differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment. *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2008). A plaintiff does not have to identify actual instances when others have been treated differently in her complaint. *Phillips*, 515 F.3d at 244. However, her allegations must include a claim that she has been treated differently from others similarly situated. *Id.* Here the Plaintiffs allege that they have been treated differently, such as when they were cited for zoning violations, when others similarly situated were not. (Compl. ¶ 55(a).) Plaintiffs sufficiently plead a class of one at this stage of the proceedings. Because the Plaintiffs sufficiently plead a § 1985 conspiracy, the Defendants' Motion to Dismiss will be denied.

C. Failure to prevent constitutional harm (Count VIII)

42 U.S.C. §1986 prohibits neglecting or refusing to thwart a § 1985 conspiracy when it is within one's power to do so. If there is no violation of § 1985, there can be no violation of § 1986. *See, e.g., Carter v. Delaware State Univ.*, 65 Fed. Appx. 397, 400 (3d Cir. 2003). Plaintiffs assert "Defendants, in their individual capacities, failed to prevent the aforementioned conspiracy to deprive Plaintiffs' equal protection rights." (Compl. ¶ 93.) The Plaintiffs make no allegations, however, as to how the actors not alleged to be municipal employees had the power to prevent the conspiracy. Therefore, Defendants King, Hanky, and Robert will be dismissed from Count VIII. As to the remaining Defendants, the Plaintiffs plead a cause of action under § 1986 with sufficient specificity, therefore, their motion to dismiss will be denied.

D. Punitive Damages

As Plaintiffs concede in their Brief in Opposition, punitive damages are not available from a municipality for actions under § 1983 or state tort law. Plaintiffs argue correctly that individuals may still be liable for punitive damages, even if they were municipal actors. *See Monteiro v. City of Elizabeth*, 436 F.3d 397 (3d Cir. 2006) (discussing application of punitive damages standard in action against municipal officials). The Defendants' Motion to Dismiss punitive damages against the Borough of Edwardsville, the Council of the Borough of Edwardsville, and the Edwardsville Zoning Hearing Board will be granted.

### IV. Dismissal without Prejudice

Defendants request that this Court dismiss the Plaintiffs Complaint with prejudice. Under the precedent of this Circuit, however, a plaintiff has the opportunity to file a first motion to amend their complaint where there has been no answer. *Grayson v. Mayview State Hospital*, 293 F.3d 103, 108 (3d. Cir. 2002). The Defendants' Motion to Dismiss will be granted without prejudice.

### CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss will be granted in part and denied in part due to municipal immunity, the statute of limitations, and failure to state a claim.

An appropriate Order follows.

| | |
|---|---|
| November 13, 2009 | /s/ A. Richard Caputo |
| Date | A. Richard Caputo |
| | United States District Judge |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL A. JANNUZZI, and, DEBRA JANNUZZI, <br><br> Plaintiffs, <br><br> v. <br><br> THE BOROUGH OF EDWARDSVILLE, et al., <br><br> Defendants. | CIVIL ACTION NO. 3:09-cv-970 <br><br> (JUDGE CAPUTO) |

## ORDER

**NOW**, this 13th day of November, 2009, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (Doc. 6) Plaintiff's Complaint (Doc. 1) is **GRANTED IN PART** and **DENIED IN PART** as follows:

1. Count III is **DISMISSED** as to claims of procedural due process.

2. Count IV is **DISMISSED**.

3. Count V is **DISMISSED** as to any claims of defamation arising from statements prior to May 21, 2008.

4. Counts V and VI are **DISMISSED** as to Defendants the Borough of Edwardsville, the Council of the Borough of Edwardsville, and the Edwardsville Zoning Hearing Board.

5. Count VIII is **DISMISSED** as to Defendants King, Hanky, and Roberts.

6. All claims for punitive damages are **DISMISSED** against Defendants the Borough of Edwardsville, the Council of the Borough of Edwardsville, and the Edwardsville Zoning Hearing Board.

                                                  /s/ A. Richard Caputo  
                                                  A. Richard Caputo  
                                                  United States District Judge